UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

FREDDIE ALAN HENDERSON,

                    Plaintiff,

vs.

                                   Case No.  2:09-cv-149-FtM-36DNF

WILLIAM G. LANGENBRUNNER,

                    Defendant.
_____


## OPINION AND ORDER

### I. Status

This matter comes before the Court upon Defendant Langenbrunner's Motions for Summary Judgment (Doc. #73, Motion and Doc. #78, Motion) filed May 29, 2009.  In support  of the Motion, Defendant attaches an  Affidavit of Christine England dated December 18, 2008 (Exh. L); and, copies of grievances Plaintiff submitted to the Florida Department of Corrections related to the claims raised in the Complaint (Exhs. A-K).  The Motion also makes reference to portions of the transcript from Plaintiff's September 5, 2008 deposition, which was filed separately in this matter (Doc. #74, Pl. Depo.)  The Court advised Plaintiff how to respond to a motion for summary judgment, and directed Plaintiff to file a response to the Motion.  See Order of Court dated July 1, 2009 (Doc. #76).  As of the date of this Order, Plaintiff has not responded to the Motion, and the time for doing so has long

expired.  See docket.  Consequently, the Court deems this matter
ripe for review without the benefit of a response from Plaintiff.

## II. Procedural History

Plaintiff, who is incarcerated within the Florida Department
of Corrections (the "Department"), initially filed a *pro se* civil
rights complaint form pursuant to 42 U.S.C. § 1983 (Doc. #1,
Complaint) against Defendants Bettis and Langenbrunner
("Complaint," Docs. #1, #1-2, #1-3) in case number 2:07-cv-97-FtM-
36DNF.  The Complaint therein alleged two First Amendment free
exercise of religion violations, one First Amendment retaliation
violation, and one First Amendment access to court violation
against Defendants Bettis and Langenbrunner, stemming from three
separate incidents that occurred in 2006, while Plaintiff was
confined at Charlotte Correctional Institution.  *See generally*
Complaint. After denying Defendants' motion to dismiss (Doc. #38),
the Court granted the Defendants' Motion to Sever the unrelated
claims raised in the Complaint (Doc. #68, "March 11, 2009 Order").
In particular, the Court permitted Plaintiff's First Amendment free
exercise of religion claim, stemming from an October 9, 2006
incident, to proceed against Defendant Bettis in Plaintiff's first-
filed action at 2:07-cv-97; and, directed the clerk to open the
above-captioned action concerning Plaintiff's other First Amendment
claims, stemming from two separate but related incidents that
occurred on October 11, 2006 and November 9, 2006, against

Defendant Langenbrunner. *See generally* March 11, 2009 Order. This Order addresses only the claims raised in the Complaint against Defendant Langenbrunner.

According to the Complaint, Plaintiff is an observant Muslim who adheres to the tenets of the Islamic faith. Complaint at 8-9. Plaintiff asserts that his First Amendment free exercise of religion rights were violated by Defendant Langenbrunner on October 11, 2006, when Langenbrunner failed to provide Plaintiff with his dietary restricted bagged lunch when requested, so that Plaintiff could break his Ramadham fast and pray at the appropriate time. *Id.* 5-6. Plaintiff states that he filed an informal grievance against Langenbrunner concerning the denial of his bag meal, which was approved by Lieutenant Colon on November 6, 2009. *Id.* at 6.

Plaintiff next claims that, on November 9, 2006, Defendant Langenbrunner retaliated against him for filing the informal grievance and also denied him access to the courts in violation of his First Amendment rights, when Langenbrunner refused to accept Plaintiff's outgoing legal mail. *Id.* at 6-7. Plaintiff states that when he handed Defendant Langenbrunner a package for mailing, Langenbrunner told Plaintiff that his envelope "was too big to fit into the legal box." *Id.* Thereafter, on November 13, 2006, another correctional officer accepted the same package for mailing without incident. *Id.* at 7.

Defendant Langenbrunner seeks summary judgment in his favor on the basis that Plaintiff failed to properly exhaust his administrative remedies concerning his claims, and, in the alternative on the merits. *See generally* Motion. *Id.* at 2. For the reasons set forth *infra*, the Court finds that Defendant is entitled to summary judgment in his favor on the merits on each of Plaintiff's First Amendment claims.

### III.  Applicable Law

A.  <u>Summary Judgment Standard</u>

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of fact and compels judgment as a matter of law." *Swisher International, Inc. v. Schafer*, 550 F. 3d 1046, 1050 (11th Cir. 2008); Fed. R. Civ. P. 56(c).  An issue is "genuine" if there is sufficient evidence such that a reasonable jury could return a verdict for either party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The moving party bears the burden of identifying those portions of the pleadings, depositions, answers to interrogatories, admissions, and/or affidavits which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Hickson Corp. v. Northern Crossarm Co., Inc.*, 357 F.3d 1256, 1259-60 (11th Cir. 2004).  The standard for creating a genuine dispute of fact requires courts to "make all *reasonable* inferences in favor of the

party opposing summary judgment, *Chapman v. Al Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000)(en banc) (emphasis added), not to make all *possible* inferences in the non-moving party's favor. Further, "allegations in affidavits must be based on personal knowledge, and not be based, even in part, 'upon information and belief.'" *Pitman v. Tucker*, 213 F.3d 867, 870 (11th Cir. 2008)(quoting *Pace v. Capobianco*, 283 F.3d 1275, 1278 (11th Cir. 2002)). Rule 56(e) provides that an affidavit submitted in conjunction with a summary judgment motion "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e).

To avoid the entry of summary judgment, a party faced with a properly supported summary judgment motion "bears the burden of persuasion" and must come forward with extrinsic evidence, i.e., affidavits, depositions, answers to interrogatories, and/or admissions, and "set forth specific facts showing that there is a genuine issue for trial." *Beard v. Banks*, 548 U.S. 521, 529 (2006)(citations omitted); *Celotex*, 477 U.S. at 322; *Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1225 (11th Cir. 1999). If there is a conflict in the evidence, the non-moving party's evidence is to be believed and "all justifiable inferences" must be drawn in favor of the non-moving party. *Beard*, 548 U.S. at 529 (citations omitted); *Shotz v. City of Plantation, Fl.*, 344

F.3d 1161, 1164 (11th Cir. 2003). The court, however, "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, [the court's] inferences must accord deference to the views of prison authorities." *Beard* 548 U.S. at 530. "A court need not permit a case to go to a jury, however, when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" *Cuesta v. School Bd. of Miami-Dade County*, 285 F.3d 962, 970 (11th Cir. 2002) (citations omitted). Nor are conclusory allegations based on subjective beliefs sufficient to create a genuine issue of material fact. *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling in a motion for summary judgment." *Scott v. Harris* 550 U.S. 372, 380 (2007). In the summary judgment context, however, the Court must construe *pro se* pleadings more liberally than those of a party represented by an attorney. *Loren v. Sasser*, 309 F.3d 1296, 1301 (11th Cir. 2002).

    B.   <u>Exhaustion</u>

    The Prison Litigation Reform Act (hereinafter "PLRA"), which amended The Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997e, provides as follows:

> (a) Applicability of administrative remedies.
> No action shall be brought with respect to
> prison conditions under section 1983 of this
> title, or any other Federal law, by a prisoner
> confined in any jail, prison, or other
> correctional facility **until such
> administrative remedies as are available are
> exhausted.**

42 U.S.C. § 1997e(a)(emphasis added).

The PLRA's exhaustion requirement is intended to: (1) "eliminate unwarranted federal-court interference with the administration of prisons," (2) "'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case,'" and (3) "'reduce the quantity and improve the quality of prisoner suits.'" *Woodford v. Ngo*, 126 S. Ct. 2378, 2387 (2006)(quoting *Porter v. Nussle*, 534 U.S. 506, 524-25 (2002)) (internal footnote and citations omitted). As a result of the PLRA, consideration of "[e]xhaustion is no longer left to the discretion of the district court, but is mandatory." *Woodford*, 126 S. Ct. at 2382; (referencing *Booth v. Churner*, 532 U.S. 731, 739 (2001)). *See also Bryant v. Rich*, 530 F.3d 1368, 1372 (11th Cir. 2008). Additionally, the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they involve excessive force or some other wrong doing. *Woodford*, 126 S. Ct. at 2382; *Nussle*, 534 U.S. at

532; *Booth*, 532 U.S. at 741. Inmates, however, "are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Bock*, 127 S. Ct. 910, 921 (2007). Rather, pursuant to the PLRA, failure to exhaust administrative remedies is an affirmative defense. *Id.*

"[T]he PLRA exhaustion requirement requires **full** and **proper** exhaustion."[1] *Woodford*, 126 S. Ct. at 2387 (emphasis added). Accordingly, in *Johnson v. Meadows*, 418 F.3d 1152 (11th Cir. 2005), the Eleventh Circuit, noting the "policies favoring exhaustion," held that the PLRA contains a procedural default component which arises where an inmate fails to avail himself in a timely fashion of an institution's administrative process. *Id.* at 1156, 1159, *cert. denied*, *Johnson v. Meadows*, 126 S. Ct. 2978 (2006). Thus, where an inmate's grievance is denied because he failed to timely pursue his administrative remedies, that inmate is barred from bringing a federal action on that claim because the inmate cannot demonstrate full exhaustion of remedies. *See Id.* at 1158.

Whether an inmate has exhausted his available administrative remedies is a factual issue that is properly made by the court. *Bryant v. Rich*, 530 F.3d at 1374. Thus, "[e]ven though a failure

---

[1] "[A] prisoner should include as much relevant information as he reasonably can in the administrative grievance process." <u>Brown v. Sikes</u>, 212 F.3d 1205, 1207-1208 (11th Cir. 2000).

-to-exhaust defense is non-jurisdictional, it is like a defense for lack of jurisdiction in one important sense: exhaustion of administrative remedies is a matter in abatement, and ordinarily does not deal with the merits." *Id.* (footnote, internal quotations, and citations omitted).

The Court recognizes that the Department is statutorily mandated to implement "rules relating to . . . grievance procedures which shall conform to 42 U.S.C. § 1997e." Fla. Stat. § 944.331. As such, the Department has established a three-step inmate grievance procedure for all inmates in their custody, which is set forth in Chapter 33-103 of the Florida Administrative Code. Exh. L, ¶3. First, an inmate must normally file either an informal grievance or formal grievance depending on the nature of his complaint. *Id.* Informal grievances are to be filed "within a reasonable time" of the date of the incident. *Id.* Inmates must file a formal grievance within fifteen days from when the informal grievance was responded to; or, within fifteen days of the date of the incident if the grievance is used to initiate the grievance process. *Id.* If the inmate's issue is not resolved at the institutional level, the inmate must file an appeal to the Office of the Secretary of the Department. *Id.*

C.   First Amendment - Free Exercise

The Complaint alleges a First Amendment free exercise claim, stemming from Defendant Langenbrunner's failure to provide Plaintiff with his bagged meal, in order for Plaintiff to break his fast and pray. The First Amendment to the United States Constitution provides:

> Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or of the right of the people peaceably to assemble, and to petition the Government for a redress of grievances.

U.S. Const. Amend. I.[2] Although, "prisoners do not shed all constitutional rights at the prison gate, . . . [l]awful incarceration brings about the necessary withdrawal or limitation of many privileges and rights." *Sandin v. Conner*, 515 U.S. 472, 485 (1995)(citation and quotations omitted). Despite their incarceration, inmates must be afforded a "reasonable opportunity" to exercise their religious freedom. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). Thus, in order to sustain a First Amendment claim, a prisoner must be able to show that his ability to practice his faith was substantially burdened. *See Turner v. Safley*, 482 U.S. 78, 85 (1987); *Cheffer v. Reno*, 55 F.3d 1517, 1522 (11th Cir. 1995). A "substantial burden" is defined as a burden that either

---

[2]The First Amendment's Free Exercise Clause is applicable to the states through the Fourteenth Amendment. See *Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940).

compels a person to engage in conduct that is forbidden by his religion, or conduct that prohibits a person from engaging in conduct required by his religion. *Cheffner* at 1522.

D.  First Amendment - Retaliation

The Complaint also raises a First Amendment retaliation claim stemming from Defendant Langenbrunner's failure to accept Plaintiff's legal mail for mailing. To establish a retaliation claim, the inmate must demonstrate that: "first, his speech or act was constitutionally protected; second, that the defendant's retaliatory conduct adversely affected the protected speech; and third, . . . a causal connection between the retaliatory actions and the adverse affect on speech." *Douglas v. Yates* 535 F.3d 1316 1321 (11th Cir. 2008)(citing *Bennett v. Hendrix*, 423 F.3d 1247, 1250 (11th Cir. 2005)); *Smith v. Mosley*, 532 F.3d 1270, 1276 (11th Cir. 2008). An inmate's constitutionally protected "First Amendment rights to free speech and to petition the government for a redress of grievances are violated when a prisoner is punished for filing a grievance concerning the conditions of his imprisonment." *Douglas*, 1321 (2008)(quoting *Boxer v. Harris*, 437 F.3d 1107, 1112 (11th Cir. 2006)). Thus, an essential element of a First Amendment retaliation claim is the existence of a retaliatory motive. *See Gattis v. Brice*, 136 F.3d 724, 726 (11th Cir. 1998) ("To succeed in a section 1983 suit based on a claim of retaliation for speech, the plaintiff must show that his speech was

a 'substantial' or 'motivating' factor in the allegedly retaliatory decision."). *See also Farrow v. West*, 320 F .3d 1235, 1240 (11th Cir. 2003). A plaintiff must do more than make "general attacks" upon a defendant's motivations and must articulate "affirmative evidence" of retaliation to prove the requisite motive. *Crawford -El v. Britton*, 523 U.S. 574, 600 (1998) (citations omitted). In essence, a plaintiff must be able to show that a defendant was "subjectively motivated to discipline" the plaintiff for exercising his First Amendment rights. *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008). Additionally, a plaintiff must show that he was "penalized for exercising the right of free speech." *Brown v. Mache*, 233 Fed. Appx. 940, 941 (11th Cir. 2007).

Courts are not to infer causation or construe legal conclusions as facts. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242 (11th Cir. 2005). Further, courts should give deference to prison officials when evaluating whether there was legitimate penological reasons for the alleged retaliatory conduct. *Sandin v. Conner*, 515 U.S. 472, (1995).

E.   <u>First Amendment - Access to Court</u>

Finally, Plaintiff asserts that he was denied access to court when Defendant Langenbrunner refused to accept his legal mail on November 9, 2006. The Supreme Court made clear that the First Amendment grants inmates a limited constitutional right of access to the court. *Bounds v. Smith*, 430 U.S. 817, 821, 828 (1977);

*Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991). This right necessitates that an inmate be afforded "a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts." *Lewis* 518 U.S. at 351. Thus, an inmate must show that his "fundamental right of access to the courts in order to attack his sentence or to challenge the conditions of his confinement" were impaired or obstructed by the prison officials' actions. *Id.* Specifically, the plaintiff must show that the denial of access to court prejudiced him in a criminal appeal, post-conviction matter, or in a civil rights action under 42 U.S.C. § 1983 "to vindicate 'basic constitutional rights.'" *Id.* (quoting *Wolff v. McDonnell*, 418 U.S. 539, 579 (1974)); *Bass v. Singletary*, 143 F.2d 1442, 1445 (11th Cir. 1998). Moreover, a plaintiff cannot establish actual injury unless the case that the plaintiff was unable to pursue had arguable merit. *Lewis*, 581 U.S. at 353; *Wilson v. Blankenship*, 163 F.3d 1284, 1291 (11th Cir. 1998). The actual injury requirement is derived from the constitutional principle of standing. *Lewis*, 518 U.S. at 349.

## V.  Undisputed Facts and Conclusions of Law

### First Amendment-Free Exercise of Religion

Plaintiff is a practicing Muslim, who at the time of the incident, was housed in close management confinement[3] in Quad Four at Charlotte Correctional Institution. During Ramadan, consistent with his religious tenets, Plaintiff fasts by not eating from sunrise to sunset. Pl. Depo. at 21. Sometime after 7:00 p.m. on October 11, 2006, during Ramadan, Plaintiff was in his cell and saw that the evening bagged meals had been delivered and left on the ledge outside of Quad One, in his dormitory. *Id.* at 77-79. Plaintiff left his cell, which was open, and approached Defendant Langenbrunner, who was the only officer in Quad One, and asked him if he could retrieve his bagged meal. Id. at 78. In response, Defendant Langenbrunner told Plaintiff he would be "all right." *Id.* at 79. Plaintiff then took a seat next to inmate Jenkins, who is also a Muslim, and complained that Langenbrunner would not let him get the bagged meals. *Id.* at 81. Plaintiff then got back up and again approached Defendant Langenbrunner to explain the significance of his fast. *Id.* Langenbrunner said "Okay" and agreed to "check up on the bag lunch." *Id.*

Defendant Langenbrunner then left Quad Four, went to the officers' station for an unknown reason, retrieved the bagged evening meals from Quad One, returned back to Quad Four with the

---

[3]A close management inmate is confined to his cell for the majority of the day, being permitted outside of the cell for two hours of recreation during the day and two hours of recreation in the evening. Pl. Depo. at 30-31.

meals, and delivered the bagged meals to Plaintiff and inmate Jenkins. *Id.* 83-85. Plaintiff estimates that it took Defendant Langenbrunner approximately "thirty-five minutes" to return with the bagged meals after he left the Quad to retrieve them. *Id.* After receiving his meal, Plaintiff went into his cell, and broke his fast and ate his meal. *Id.* at 89. Immediately thereafter, he prayed. *Id.* In fact, Plaintiff was "able to break [his] fast within the five minutes of sunset and pray within the five minutes of sunset" as he desired. <u>Id.</u>

Plaintiff filed an informal grievance concerning the October 11, 2003 incident on October 13, 2006. Exh. A. Although originally denied, the Department issued an "Amended Response" to Plaintiff's informal grievance on November 6, 2006, and "approved" the grievance. Exh. D.

Defendant contends that Plaintiff failed to fully exhaust his administrative remedies because he did not correct or re-file an appeal to his formal grievance, which was denied on November 1, 2006 by the Department. Motion at 4, 8. The Court notes that after the Department denied Plaintiff's formal grievance, it filed an amended response approving Plaintiff's informal grievance. Defendant does not explain what additional steps an inmate must take to exhaust his administrative remedies within the Department if a grievance is "approved." *See generally* Exh. L. Consequently, the Court is unpersuaded by Defendant's argument that Plaintiff did

not exhaust his administrative remedies regarding the October 11 incident.

Nonetheless, based upon the undisputed material facts set forth above, the Court finds that Plaintiff can not show that Defendant Langenbrunner violated his First Amendment free exercise rights.  In particular, Plaintiff acknowledges that Defendant Langenbrunner delivered his bagged evening meal, and he was able to pray after breaking his fast consistent with his religious tenets. Further, Plaintiff can not show that the thirty-five (35) minute delay substantially burdened his ability to practice his faith. Plaintiff admitted that he was able to break his fast and pray consistent with the tenets of his faith.  Consequently, because it is undisputed that Plaintiff was not prohibited from engaging in conduct required by his religion, the Court will grant Defendant Langenbrunner summary judgment on Plaintiff's First Amendment free exercise claim stemming from the October 11, 2006 incident.

### First Amendment Retaliation

On November 13, 2006, Defendant Langenbrunner was designated to pick up legal mail and refused to accept a legal package from Plaintiff because the package could not fit into the mail slot located on the institution's portable mail box.  Pl. Depo. at 94-96.  Plaintiff acknowledged that the package "couldn't fit in the slot."  *Id.* at 94.  Defendant Langenbrunner returned the package to Plaintiff.  *Id.*  The next day, another officer, who was the

designated legal mail officer, accepted the same package and had to place it on top of the portable mail box because it did not fit into the mail slot. *Id.* at 97-100.

On November 13, 2006, Plaintiff filed an informal grievance concerning the mail incident. Exh. G. Plaintiff complained that as a result of Defendant Langenbrunner refusing to accept his legal mail, he was denied access to court. *Id.* Plaintiff also stated that he believed that "[Langenbrunner] is retaliation [sic] against me for a previous grievance." *Id.* On November 20, 2006, Plaintiff's informal grievance was denied. Exh. J. In the denial, correctional officials state that Officer Langenbrunner was interviewed and he did "not recall the particular incident," but understood that "all inmates are afforded the opportunity to have their legal mail picked up for mailing." *Id.*

On November 22, 2006, Plaintiff filed a formal grievance appealing the denial of his informal grievance, in which Plaintiff re-alleged and incorporated by reference the facts set forth in his informal grievance. Exh. H. Additionally, Plaintiff stated that still photos retrieved from a video camera in the area would support Plaintiff's allegation that Langenbrunner came to Plaintiff's cell but left without taking Plaintiff's mail. *Id.* On November 28, 2006, Plaintiff's formal grievance was denied. Exh. I.

On November 30, 2006, Plaintiff appealed the denial of his formal grievance to the Secretary of the Department. Exh. J. Plaintiff again re-alleged and incorporated by reference the facts sets forth in his formal grievance. Id. The Secretary denied Plaintiff's appeal on December 20, 2006. Exh. K.

Defendant submits that Plaintiff did not properly exhaust his retaliation claim because, although he raised both an access to court claim and a retaliation claim in his informal grievance, Plaintiff only raised the access to court claim in his formal grievance. Exh. L at 5. Further, Defendant contends that the informal grievance improperly addressed more than one "issue" - - Plaintiff's access to court claim and Plaintiff's retaliation claim. *Id.*

Here, Plaintiff availed himself of the three-step process regarding Defendant Langenbrunner's failure to accept Plaintiff's legal mail. Plaintiff re-alleged and incorporated the facts set forth in his informal grievance in both his formal grievance and the appeal thereof, which included his allegation that Defendant Langenbrunner's actions were retaliatory and denied him access to court. *See* Exhs. H & J. Further, the Court does not find that an incident which gives rise to various claims or causes of action necessarily equates to different "issue[s] or complaint[s]" as that term is used in the Department's rules. See Fla. Admin. Code, Rule 33-103.014(1)(a). Further, according to the Department's Rules,

Plaintiff's informal grievance, formal grievance, and the appeal therefrom should have been returned "without a response on the merits" if Plaintiff had improperly grieved more than one "issue or complaint." *Id.* Instead, the Department responded to each of Plaintiff's grievances on the merits, by denying the same. *See* Exhs. K, I. Based upon a review of the record, the Court is not convinced that Plaintiff did not properly exhaust his remedies regarding the November 9th incident for purposes of the PLRA; and, thus, will turn to the merits of Plaintiff's retaliation claim.

At the outset, it is clear that Plaintiff has demonstrated the first element of a retaliation claim because Plaintiff's grievance concerning the October 6, 2006 incident is constitutionally protected speech. *Smith v. Mosley*, 532 F. 3d 1270 at 1276. However, Plaintiff cannot demonstrate the second and third element necessary to sustain his claim. Significantly, the Court finds that Defendant Langenbrunner's conduct in not accepting Plaintiff's oversized package did not amount to punishment or discipline that "would likely deter a [prisoner] of ordinary firmness" from complaining about the conditions of his confinement. *Id.* at 1277. "Whether the discipline 'would likely deter' present[s] an objective standard and a factual inquiry." *Id.* Plaintiff admits that Defendant Langenbrunner stopped at his cell in order to pick up his legal mail. Defendant initially accepted the package from Plaintiff, and returned it only after determining that it did not

fit into the mail slot.  Pl. Depo. at 95.  Defendant did not
discard the package but handed it back to Plaintiff.  *Id.* at 97.
Under these circumstances, the Court does not find that
Langenbrunner's conduct can be construed as punitive.  Moreover,
Plaintiff was not deterred from seeking redress by the alleged act
of retaliation since he immediately filed another grievance against
Lngenbrunner regarding the mail incident.

Nor does the Court find a causal link between Plaintiff's
filing a grievance against Defendant Langenbrunner and Defendant's
failure to accept Plaintiff's over-sized legal envelope.  Other
than his own conclusory allegation that Defendant's conduct was in
retaliation for Plaintiff writing the grievance, Plaintiff has not
come forward with "affirmative evidence" from which a jury could
find that Langenbrunner was subjectively motivated to punish
Plaintiff.  *Crawford-El v. Britton*, 532 U.S. at 600.  While
collecting the mail, Defendant did not make any derogatory comments
to Plaintiff nor make any remarks regarding the previous grievance
filed by Plaintiff.  Pl. Depo. at 102.  Instead, Defendant
articulated to Plaintiff a rational reason why he could not accept
the package.  Even if Defendant was aware that Plaintiff had filed
a grievance against him, grievances by inmates are part of the
correctional system, and jail officials are accustomed to dealing
with them on a daily basis.  In fact, Plaintiff admitted that,
after the mail incident, he did not have any other problems with

Defendant.  Id. at 103.  Thus, the Court  finds that Plaintiff has failed to carry his burden of proof regarding both the second and third elements necessary to prove a retaliation claim, and will grant summary judgment to Defendant Langenbrunner on this issue.

<u>First Amendment Access to Court</u>

Similarly, the Court finds the undisputed facts demonstrate that Defendant's actions in failing to pick up Plaintiff's legal mail did not impede or deny Plaintiff access to court.  Assuming *arguendo* that Plaintiff's legal mail was related to his pending civil rights action filed pursuant to section 1983, Plaintiff acknowledges that his civil rights case was not dismissed due to Defendant's failure to accept the package for  mailing.  Pl. Depo. at 103.  Indeed, Plaintiff states that he did not "suffer any penalties or anything from the Court for the three-day delay." *Id.* In fact, Plaintiff concedes that he was not under any court-imposed deadline at the time of the incident, but just "wanted to send it out at that time." *Id.* at 104.  Consequently, the Court finds Defendant Langenbrunner is entitled to summary judgment in his favor on Plaintiff's First Amendment access to court claim.

ACCORDINGLY, it is hereby

**ORDERED and ADJUDGED:**

1.  Defendant Langenbrunner's Motions for Summary Judgment (Doc. #73 and Doc. #78) are **GRANTED** and this case is **dismissed with prejudice.**

2.   The **Clerk of Court** shall enter judgment; terminate any pending motions; and close this file.

**DONE AND ORDERED** in Fort Myers, Florida, on this 2nd day of April, 2010.

Charlene Edwards Honeywell
United States District Judge

SA: hmk

Copies: All Parties of Record